**UNITED STATES of America,**

v.

**The SUFFOLK IRON AND STEEL CO., Inc.**

**Civ. No. 52–451.**

United States District Court,
D. Massachusetts.

Feb. 17, 1953.

George F. Garrity, U. S. Atty., Boston, Mass., C. Owen Dooley, Spec. Asst. U. S. Atty., Boston, Mass., W. Langdon Powers, Asst. U. S. Atty., Boston Mass., for plaintiff.

Frank L. Kozol, Friedman, Atherton, King & Turner, Boston. Mass., for defendant.

SWEENEY, Chief Judge.

This is an action brought pursuant to the Defense Production Act of 1950, 50 U.S.C.A.Appendix, § 2061 et seq. After a Stipulation of Facts had been entered into the Government filed a Motion for Summary Judgment which is now before me for consideration.

### Findings of Fact

From the Stipulation of Facts it appears that the Defendant is a dealer in steel scrap in Chelsea, Massachusetts. Between April 21, 1951 and August 29, 1951, the defendant sold and delivered at different dates steel scrap, the maximum prices for which were established by Ceiling Price Regulation 5. As of February 7, 1951, which was the effective date of Ceiling Price Regulation 5, the defendant did not as a customary business practice ship steel from Boston to Sparrows Point, Maryland, by vessel movement, and it was not the customary business practice for shipments of scrap to be made from Boston to Sparrows Point by vessel, but there was, nevertheless, on that date, an established water rate for shipments from Boston to Sparrows Point. As of February 7, 1951, there were regular vessel movements of steel scrap being made to Sparrows Point from points other than Boston. During the period between April 21, 1951, and August 29, 1951, the defendant sold 920.8 tons of steel for a price of $35,219.02. In each instance the defendant used the water rate in computing the price of its steel scrap. It actually shipped by rail and by reason of using the water rate it charged an excess over the maximum allowable total price in the sum of $2,613.25.

The defendant challenges the validity of Ceiling Price Regulation 5 and argues for an interpretation that would permit the deduction of water rates even though they were not used. This Court cannot agree with the defendant's contention. Section 21(c) of Ceiling Price Regulation 5 reads as follows:

"No vessel charge shall be deemed an established charge within the provisions of this regulation unless regular vessel movement of scrap, except for seasonal restrictions, is being made to the most favorable basing point as of the effective date of this regulation, as a customary business practice".

The defendant argues that this Section should be read in the light of comparable provisions of the price control programs of World War II. With this I do not agree. The language of Section 21(c) is too clear to need any interpretation other than that set out in the plain language of the Section. Since it appears from the Stipulation that it was not a customary business practice for movements of scrap to be made from Boston to Sparrows Point by vessel, then it necessarily follows that the defendant was not entitled to deduct the water rate.

The error that this defendant made was an error rather common to the steel scrap industry and was probably fostered in part by the interpretation of Section 21(c) given by the Institute of Scrap Iron and Steel, Inc. I therefore find that the over-charge by this defendant was not wilful nor was it the result of its failure to make sufficient inquiries and take sufficient precautions.

## Conclusions of Law

From the foregoing, I conclude and rule that Section 21(c) prohibits the deduction of the water rate when as appears here it was not the customary business practice for shipments of steel scrap to be made from Boston to Sparrows Point by vessel movement.

From the foregoing, I conclude and rule that the Plaintiff is entitled to judgment in the sum of $2,613.25.